UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ERICK DALVI ACEVEDO TERRERO,

                      *Petitioner*,

– against –

JOHN TSOUKARIS, *NJ Director, Enforcement & Removal Operations, U.S. Immigration and Customs Enforcement,* TODD LYONS, *Acting Director, U.S. Immigration and Customs Enforcement,* KRISTI NOEM, *Secretary of the U.S. Department of Homeland Security,* PAMELA BONDI, *Attorney General of the United States,* LUIS SOTO, *Warden, Delaney Hall, Newark, NJ,*

                      *Respondents.*

**MEMORANDUM & ORDER**
26-cv-00869 (NCM)

**NATASHA C. MERLE**, United States District Judge:

On February 4, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained petitioner Erick Dalvi Acevedo Terrero outside of a police precinct in Suffolk County, New York. Decl. of Craig Limoncelli ("Limoncelli Decl.") ¶¶ 5–7, ECF No. 13. On February 12, 2026, petitioner sought a writ of habeas corpus from this Court under 28 U.S.C. § 2241. Pet. ¶ 1, ECF No. 1. On February 19, 2026, the Court held oral argument and granted the petition. This opinion sets forth the Court's reasoning.

## BACKGROUND

Petitioner is a citizen of the Dominican Republic. Limoncelli Decl. ¶ 1. On August 30, 2019, petitioner was admitted to the United States at John F. Kennedy Airport as a K1 Non-Immigrant Visitor with authorization to remain in the United States until November

1

27, 2019. Limoncelli Decl. ¶ 3. Petitioner did not secure authorization to remain in the United States past November 27, 2019. Limoncelli Decl. ¶ 4.

On February 4, 2026 at 10:30 AM, petitioner was arrested by the Suffolk County Police Department ("SCPD") on state law charges of Promoting Prostitution in the Third Degree, a class D felony, and Conspiracy in the Fifth Degree, a class A misdemeanor. Limoncelli Decl. ¶ 4; N.Y.P.L. §§ 105.05, 230.25. At some point, "SCPD turned custody of the [p]etitioner over to the Federal Bureau of Investigation for further investigation and upon completion of that investigation, the [p]etitioner was referred to ICE which then conducted records checks which revealed that [p]etitioner ha[d] no lawful status in the United States." Limoncelli Decl. ¶ 6.

At 6:40 PM, ICE Officer "J. Diaz" made a custody determination that, pursuant to Section 236 of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1226), petitioner would be "Detained by the Department of Homeland Security" pending a final administrative determination in petitioner's immigration case. *See* I-286 Notice of Custody Determination Form ("I-286 Form"), ECF No. 14-1 at 3.[1] That same day, "outside of the SCPD 4th Precinct, ICE executed a Form I-200, Warrant for Arrest of Alien, and arrested the [p]etitioner." Limoncelli Decl. ¶ 7. The arrest occurred at 7:15 PM. *See* "INA § 236(a) Initial Custody Determination" Form ("ICD Form") 1, ECF No. 14-1.

Following petitioner's arrest, ICE transported petitioner to the Central Islip Hold Room ("CIHR") and booked him into the facility at 7:25 PM. Limoncelli Decl. ¶ 7. ICE

---

[1] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

booked petitioner out of CIHR at 7:50 PM and transported him to the Nassau County Correctional Center ("NCCC"), where he was booked in at 8:35 PM. Limoncelli Decl. ¶ 11.

At 8:05 PM, while petitioner was in transit between the CIHR and the NCCC, an immigration officer completed a form titled "INA § 236(a) Initial Custody Determination." *See* ICD Form 1–2. The form explains that "[p]ursuant to a settlement agreement reached in *Velesaca v. Decker*, No. 20-cv-01803 (S.D.N.Y.), [immigration] [o]fficers at the New York City Field Office must utilize this form as part of the initial individualized custody determination under [8 U.S.C. § 1226(a)]." ICD Form 1. The form notes that "[d]etention under [8 U.S.C. § 1226(a)] is discretionary, and [immigration] officers must make individualized determinations in each case." ICD Form 1.

At an unstated time on February 4, 2026, ICE allegedly "served [p]etitioner with a Form I-862 Notice to Appear ("NTA") charging him with removability" for overstaying his visa. Limoncelli Decl. ¶ 8. Respondents also allege that on February 4, 2026, "DHS filed the NTA with the Executive Office for Immigration Review ("EOIR") . . . , commencing removal proceedings." Limoncelli Decl. ¶ 9. During the instant litigation, the Court ordered respondents to submit "any records, documents, or other information in petitioner's immigration file, as well as any underlying records relied upon in [their] submission not yet filed by petitioner." *See* Scheduling Order 4, ECF No. 8. Respondents submitted twenty-nine pages of records, but failed to produce an NTA. *See* Exhibits, ECF No. 14-1.

On February 6, 2026, ICE booked petitioner out of the NCCC and transported him to the Delaney Hall Detention Facility in Newark, NJ. Limoncelli Decl. ¶ 12. On February 13, 2026, petitioner was transferred from Delaney Hall Detention Facility to the Metropolitan Detention Center ("MDC") in Brooklyn, NY. Limoncelli Decl. ¶ 13. ICE

represents that it continued to hold petitioner in detention under 8 U.S.C. § 1226(a). Limoncelli Decl. ¶¶ 13, 15.

On February 12, 2026, petitioner sought a writ of habeas corpus from this Court under 28 U.S.C. § 2241. Pet. ¶ 1. On February 19, 2026, the Court held oral argument and granted the petition. *See* Minute Entry dated Feb. 19, 2026.

## DISCUSSION

Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. . . . [P]ending such decision, the Attorney General . . . may continue to detain the arrested alien [or] may release the alien on . . . bond of at least $1,500 . . . [or] conditional parole." 8 U.S.C. § 1226(a). The Department of Homeland Security has issued regulations implementing this statutory provision. *See* 8 C.F.R. § 1236.1. The language of § 1226(a) "undoubtedly vests broad authority to arrest and detain[,] but due process must account for the wide discretion [that the statute affords] to arrest any person in the United States suspected of being removable." *Gopie v. Lyons*, No. 25-cv-05229, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) (quoting *Lopez Benitez v. Francis*, No. 25-cv-05937, 2025 WL 2371588, at *10 (S.D.N.Y. Aug. 13, 2025)).[2] "[B]efore the Government may exercise such discretion to detain a person, Section 1226(a) and 8 C.F.R. 1236.1(c)(8) require ICE officials to make an individualized custody determination." *Id.* (quoting *Lopez*, 2025 WL 2371588, at *10). In conducting this individualized custody determination, "ICE must allow the noncitizen to demonstrate to the satisfaction of the officer that release would not pose a danger to property or persons,

---

[2] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

4

and that the noncitizen is likely to appear for any future proceeding." *Id.* (quoting *Kelly v. Almodovar*, No. 25-cv-06448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025)); *see also* ICD Form 1 (requiring officer to memorialize in writing whether "the individual has established that he/she does not pose a danger to persons or property").

The Court finds that in the instant case, respondents failed to make a lawful individualized custody determination. Specifically, respondents made the determination that petitioner would be detained based on his "danger to property or persons" without first giving petitioner any opportunity to "demonstrate to the satisfaction of the officer that [his] release would not pose a danger." 8 C.F.R. § 1236.1(c)(8); *see Kelly*, 2025 WL 2381591, at *3. Evidence in the record shows that Officer Diaz made the determination that petitioner would be detained pending resolution of his immigration case at 6:40 PM, I-286 Form at 1, but ICE officers did not actually arrest petitioner outside of the Suffolk Police precinct building until 7:15 PM, ICD Form at 1. Because of the chronology of these events, it was not possible that Officer Diaz spoke to or communicated with petitioner in any respect before or while making the decision to keep petitioner detained indefinitely. Moreover, respondents have presented no evidence that Diaz somehow gave petitioner the necessary opportunity to demonstrate his lack of dangerousness at another time prior to 6:40 PM. Accordingly, the Court finds that ICE made the custody determination without "allow[ing] the noncitizen to demonstrate to the satisfaction of the officer that . . . release would not pose a danger to property or persons." *Kelly*, 2025 WL 2381591, at *3. Indeed, there was no avenue for "the individual [to have] established that he/she does not pose a danger to persons or property," ICF Form 1, because petitioner was not given the chance to so establish prior to or at the time of the 6:40 PM determination that petitioner would be indefinitely detained.

Custody determinations made under § 1226(a) without any opportunity for the detainee to demonstrate his suitability for release are not lawful even if they were based on information particular to the detainee. For example, "the mere 'review' of a RAP sheet is not tantamount to an individualized assessment of a suspect's flight risk or dangerousness." *Kelly*, 2025 WL 2381591, at *3. Rather, "[i]f ICE wishes to detain a noncitizen under the detention authority provided by 8 U.S.C. § 1226(a), ICE must allow the noncitizen to demonstrate to the satisfaction of the officer that release would not pose a danger." *Id.*

In the instant case, ICE appears to have, at some point, considered petitioner's criminal history. At 8:05 PM—well after Officer Diaz made the decision to detain petitioner at 6:40 PM and well after officers arrested petitioner at 7:15 PM—an unspecified ICE officer completed the ICD Form, checked "no" in response to the question "has the individual established that he/she does not pose a danger to persons or property?," and wrote in the "discussion" section below that "[o]n November 24, 2021, subject was arrested by SP Revere for unlicensed operation of a motor vehicle. On February 4, 2026, subject was arrested by Suffolk County Police Department and charged with Promote Prost-3: Two or More Prostitutes/Travel." ICD Form 1. However, none of the contents of the ICD Form suggest that petitioner was given an opportunity to be heard prior to or at the time of the 6:40 PM custody determination.

Respondents argue that regardless of the lawfulness of petitioner's detention, the Court cannot grant petitioner relief because he has not exhausted his administative remedies by seeking a bond hearing before an immigration judge under § 1226(a). *See* Mem. in Opp'n ("Opp'n") 3–4, ECF No. 12. The Court disagrees. "[A] bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody

determination was made in the first instance." *Gopie*, 2025 WL 3167130, at *3. This is not a case where ICE followed the lawful procedures to arrive at a decision regarding dangerousness and petitioner simply seeks a second look at the question of whether or not he is a danger. Rather, because petitioner was never given the opportunity to demonstrate his lack of dangerousness before or at the time of the custody determination, it is not necessary that petitioner seek a "a re-determination of custody" by an immigration judge prior to seeking habeas relief from this Court. *See id.*; *Kelly*, 2025 WL 2381591, at *3.

To remedy the unlawful circumstances of petitioner's detention, the Court finds that petitioner is entitled to immediate release. "[A]n individual detained pursuant to Section 1226(a) who identifies some defect in the process governing her detention can raise that defect in a habeas action seeking release." *Gopie*, 2025 WL 3167130, at *2 (quoting *Salgado v. Francis*, No. 25-cv-06524, 2025 WL 2806757, at *8 (S.D.N.Y. Oct. 1, 2025)). A writ of habeas corpus "is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Accordingly, the Court deems immediate petitioner's release to be the appropriate remedy. *See Gopie*, 2025 WL 3167130, at *3; *Kelly*, 2025 WL 2381591, at *3.

## CONCLUSION

For the foregoing reasons, the Court **GRANTED** petitioner's writ of habeas corpus under 28 U.S.C. § 2241.

The Court ORDERED petitioner's immediate release from custody on February 19, 2026. *See* Minute Entry dated Feb. 19, 2026. The Court further ORDERED that the government "shall not re-detain petitioner pursuant to 8 U.S.C. § 1226(a) in a manner that contravenes any regulation, statute, or aspect of petitioner's due process rights." *See*

Minute Entry dated Feb. 19, 2026. On February 20, 2026, respondents filed a letter on the docket certifying that petitioner had been released from detention. *See* Ltr. Reporting Release from Detention, ECF No. 18.

Should petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within thirty days of this Order.

The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

                                            */s/ Natasha C. Merle*
                                            NATASHA C. MERLE
                                            United States District Judge

Dated:        March 4, 2026
               Brooklyn, New York